The next case on our calendar is Douglas Higginbotham and the American Society of News Editors v. Police Officer Curtis Sylvester. Thank you. Good morning. Good morning, Your Honors. May it please the Court, my name is Jay Goldberg. I represent the Plaintiff Appellant Douglas J. Higginbotham in this case. In granting summary judgment against Appellant's First and Fourth Amendment claims, the Court below held all inferences of fact in favor of the motion proponent. The Court then improperly applied the law of this circuit and usurped the province of what should have properly been a jury question. I'd like to start with the First Amendment claim. So the Supreme Court just granted cert last week on a case called Lozman, which asks the question of whether, in a First Amendment context, probable cause is sufficient to defeat any arrest or stopping of speech. Are you aware of that? I am not, and I apologize for not being aware of it. It was just last week. Anyway, I was going to ask for your comments. It was someone speaking at a city council meeting. They told him to stop, and eventually he didn't stop, and he was arrested. And he's brought this case to the Supreme Court that says, even though you may have had probable cause, my First Amendment rights were abridged, and I need to prevail. It sounds very much, Your Honor. It sounds like our case. No, it doesn't, and I'll explain why in a moment, but it sounds more to me like the Musso case decided by this Court. The reason I think it doesn't is because there is a distinction that must be drawn between the First Amendment analysis and the Fourth Amendment analysis in terms of probable cause. The First Amendment analysis, as the Court is aware, has a three-prong test, the middle part of that, the second prong of that test, being a question of the motivation of the actor that impeded the First Amendment right. In Musso, this Court held that whether a person was singled out for arrest based on the nature of his First Amendment conduct was a jury question not amenable to summary judgment. Even with probable cause. Musso was told to sit down in a public meeting and then was arrested for that. Your fellow is arrested for not getting down from a phone booth where the officer offers up the fact that he was concerned that he might fall off of it and injure somebody. An officer sees someone who is disruptive, tells them to stop doing it because their conduct arguably violates the statute. Whether the officer doesn't like the person or not is irrelevant as long as the officer is able to articulate objective grounds to arrest him. I don't agree that that's correct in this case. Let me explain why. Let's convert it to a traffic stop. The officer doesn't like someone who's driving a car and the person passes on a double solid line and the officer pulls him over because the person's passed on a double solid line. Wren says whether the officer likes him or doesn't like him or has another reason to stop him is irrelevant, doesn't it? Yes, and I'm not taking issue with that, nor am I taking issue with the fact that if there is probable cause for an arrest that is not inextricably intertwined with the conduct at issue. You're saying you're not taking issue with that? I'm not taking issue with that. What I'm saying in this case is— You will agree there was a basis for arresting your client? No, not for First Amendment analysis. The difference is— You will agree there was a basis for arresting your client based on the danger that he posed to others by standing up on a wet, slippery top of a phone booth? I do not agree with that. I take issue with the fact that it was slippery. I take issue with the fact that that allowed for probable cause, but I'd like to address that in the Fourth Amendment analysis. The First Amendment analysis— You don't have a First Amendment right to injure people. No question about that, Judge, but— Was it a violation of his First Amendment rights to tell him to get off the phone booth because he presented a danger to other people? The question here— Was it or wasn't it? It would be if that's what the officer did. That's not what the officer did. What did he do? As pointed out in the appellate—excuse me, the appellee's brief, MUSO stands for an anti-bootstrapping proposition. I understand, but there's also fabric—excuse me. There's other cases which—MUSO is misread and misunderstood, in my view. Fabricant's clear. In other cases, you don't have—if an officer has probable cause to arrest someone, the fact that they may be exercising a constitutional right isn't a defense to the legality of the arrest. MUSO's about a private citizen, a person who stands up in a meeting, and the head of the meeting says, and then predicating a criminal offense based upon that. That inextricably ties the instruction by the individual who's not a law enforcement officer, who's not articulating a reason about public safety. Just tell somebody to sit down and then predicate an arrest on that. This is different. The officer says, get down from the phone booth. He doesn't get down. The officer then arrests him. He doesn't say, stop filming. He says, get down from the phone booth, right? He does say, get down from the phone booth. Does he tell him to stop filming? Well, he makes it impossible for him to continue filming. No, answer my question. Don't—lesson 101, advocacy. Answer my question. Did he tell him to stop filming? He does not so articulate. Fair enough. So he didn't tell him to stop his first exercising his First Amendment rights. He told him to stop presenting a danger to other people in the public. He did not tell him that, Your Honor. That is not correct. The facts in this case are clear. The record is clear. And there is no dispute that no one at the scene articulated or thought of the reckless endangerment charge. The reckless endangerment charge was put forward in the first instance by defense counsel in this case in their motion for a 12B6 dismissal of the claim. My position on this case is very clear. Musso and Fabrikant and Mazzocchi are completely different. Okay. In Fabrikant and Mazzocchi, Mazzocchi especially was unprotected conduct, threatening statements being mailed. It's not protected at all by the First Amendment. In Fabrikant, the arrest was for an animal cruelty issue. It had nothing to do with the prior First Amendment. In this case, he was arrested after some consideration for disorderly conduct. I am saying to this court that to allow the bootstrapping of a legal construct, a fiction, if you will, that takes advantage of the broad protections that the Fourth Amendment allows for police officers and then to bootstrap that into a First Amendment analysis is incorrect. The position of the plaintiff below was always that the only reason he was singled out for arrest in this case from all the other journalists in the area was because of his vantage point above the crowd that allowed him a singular better angle for viewing what then took place. You are a member of this panel. What is the rule you want us to craft so that police officers do not ever again violate somebody's First Amendment rights in a situation like this where a person is balancing, and I've seen a picture of this, balancing up on top of a phone booth with a heavy camera with a bunch of people around him that might be injured if he slipped and fell? I believe that that becomes a jury question. No, no, no, no, no. What is the rule that we articulate so that officers are on notice that you cannot tell somebody with a camera, and I don't know whether we'll probably get iPhones in this at some point, but it wasn't an iPhone. No, it was not, Your Honor. It was a heavy camera. A 30-pound. Yeah, it was a TV camera, right? A 40-pound TV camera. Yeah. So that they know that they have no right, officers have no right to intervene in such a situation without suffering some liability. Well, there's a distinction between intervening and arresting. I do not, and I've never taken a position in this case that they could not ask him to come down. You mean this case would not be brought if they hadn't arrested him? That's correct. It's the arrest that's problematic. So they could wrestle him off the top of that, and he would not have a lawsuit, you would agree, for having been interrupted. If he had not been arrested, he could have continued his First Amendment activity. He could have taken his camera into the scrum of the other reporters and done what they were doing, which was holding it above their heads. There would not have been a First Amendment or a Fourth Amendment claim, clearly. So if a person poses a danger to, let's say there's just Joe Citizen up there, not a member of the press, getting a better vantage because he can see over the crowd and he has binoculars, he cannot be arrested? I do not believe he can. If it is reasonable to believe that that person is posing a threat to those below, then yes, a danger, a danger. That meets the statutory definition of a potential serious physical injury. He can't be arrested? He can be. What's the difference between Joe Citizen with a set of big, heavy binoculars and your client who is up there with a heavy TV camera? Well, I believe that under these facts, Your Honor, the facts and circumstances for a Fourth Amendment analysis would show that it's not a reasonable conclusion to believe that he, first as a professional, which defendants conceded they knew at the time, would present that danger that he would be in a position that he would be falling off. Plus, there are observations. Rounded phone booth, right? Rounded top of a phone booth. I contend, Judge, that it's only at the edges where it slopes down. I don't believe it's fully rounded. It's flat on the top. If the court looks at A154 and A157, I think that shows it. But there's also in the record the plans themselves for the phone booth which show that it goes sort of horizontal and then slopes at the edges. But these officers also saw him standing there, some of these officers rather, saw him standing there for five minutes with no problem and did not intercede at that point. It was only when he came down and then went back up and was on the top of the roof for another five minutes, the only time they saw fit to intercede and ask him to come down was once the violence between the protesters and the police began. If it was reasonable to believe that he was causing a danger or presenting a threat to the people below, why was he allowed to stand up there for five minutes in the first instance? Why was he allowed to stand up there for five minutes in the second instance? Are you really complaining that he wasn't arrested sooner? No, I'm not complaining about that at all. I'm indicating that that is a factor which could be properly considered by a jury as to the reasonableness of whether or not he presented a danger to those below and whether or not there was a proper basis for finding reckless endangerment. It's not whether he actually did. It's whether it was reasonable or arguable for the officer to have concluded that. So the proof of whether he really was, whether he really did violate the statute, is far different from what's necessary to conclude that it was arguable that the officer was observing a violation of the law. Yes, absolutely, and again, I believe that that should have been left to a jury. The factors in this case show that it should have been. The problem is almost always, I mean, there's no disputes of fact here. There's nothing for a fact finder to find. This is a law question. It's definitely not a fact question. You don't deny that there was probable cause, do you? Yes, I do, Your Honor. Earlier on in your argument, Judge Hall asked you very carefully, do you concede there's probable cause? You said yes. No, I believe the question that I was answering was if there was probable cause, would it be appropriate to arrest him? Okay. Your time has expired. You've reserved two minutes. We'll hear from the amicus in this case. American Society of News Editors and others. And other media and free speech organizations, Your Honors. May it please the Court, Robert Bailin, on behalf of amicus. Judge Hall, I think, asked the right question. What's the rule we should articulate? We are asking in this case that this Court join the First, the Third, the Fifth, the Seventh, the Ninth, the Eleventh Circuits, and squarely hold that there is a First Amendment right of the press and the public to record police activity in public subject to reasonable time, place, and manner restrictions. We take no position. Nothing to do with potential danger if you are up in a place where you don't belong and fall off and kill somebody with a 40-pound camera hitting them on the head. Your Honor, we take no position. This Court surely can determine that that wasn't a reasonable, that that was a reasonable time, place, and manner restriction. This Court can determine that that was probable cause. This Court could determine that it was arguable probable cause. We have a much narrower brief, Your Honor. The point we are making is that this is a qualified immunity case. And under the rules of jurisprudential consideration that are unique to qualified immunity cases, this Court has the discretion and should exercise the discretion to once and for all address this very question. If he's arrested, if we conclude that there was probable cause to arrest him on a violation of New York law, then it's not the case where the officer said, stop filming him. Right. I mean, there's your case. That's your case. And it said, A, stop filming him, and if you don't stop filming him, I'm going to arrest you for disorderly conduct because the presence of your camera is somehow inflaming these people. That's a different matter. But why would we reach that? Why would we reach out to an issue that's not necessary to the decision of this case if we decided that there was probable cause or arguable probable cause on the issue of reckless endangerment? Well, Your Honor, two answers. One, you can't pick a perfect case when you have this issue. I know. And, in fact, Your Honor, You also don't decide an issue that's not necessary to your case. Your colleagues get upset with you when you do that. Your Honor, And we don't get to pick our case. In Comirta, as well as in Pearson, the Supreme Court made it clear that in these kinds of cases, precisely because if you keep ruling that the issue has not been clearly established, the day of decision never comes, and that's exactly what we have in the Second Circuit. And we have more than that. We have a right to record depending on what judge's courtroom you walk into. Let me ask you about that. Is it your view that there's a wide variety of enforcement? Say that again, Your Honor? Is there a wide variety of a view as to the ability to record a police activity? I'm not sure I understand the import of the question. Are you interested in judges sustaining those arrests or people simply filming? The answer is half of the judges in the district court, in the Southern District, are saying we're not going to address it because we don't think the issue, the First Amendment right to record, is clearly established in this circuit. That is the problem, and that is why we are here. Were you aware that the Supreme Court granted certain rights? Oh, I was, Your Honor, but it's not the issue, at least this issue. Because it's not press. It's not that it's just not press. It's also, I think, the issue that we have a situation in this circuit that's pretty unique. This is the publishing and the media capital of the United States, and yet we don't have a clear right to guide the press, to guide the public, and most important, to guide police departments. If we decide to write on a First Amendment right, wouldn't it be dicta if we find that there was probable cause until we hear from the Supreme Court? I don't disagree, Your Honor, that you could hold off, at least hold off on the decision until you hear from the Supreme Court on that decision, because you might well find that the Supreme Court adopts the position that appellants are making here. What we urge is that regardless of how the Supreme Court does rule on that case, that there is, and, you know, it was Justice Kagan in the Comerda case that I think really put her finger on it, that precisely because of the way qualified immunity cases come up, you have this situation where just as court counsel, God bless them, they make the argument, it's not clearly established, don't reach the First Amendment issue. And in the next case, they're going to argue the same thing. And as she said, the day of decision never comes. And as a result, in these kinds of cases, she made it very clear, we are giving the lower courts the ability to avoid avoidance, to avoid constitutional avoidance. If we can make one point in this case, Your Honor, that is it. And I would say one last thing, if I may. Every circuit court has adopted that approach. The Third Circuit in Fields, the First Circuit in Glick, both of them held first that there was a First Amendment right to record police officers in public and then went on to address the qualified immunity case. And in fact, in the Third Circuit, they went on and said, sorry, it wasn't clearly established. Plaintiff in this case, you lose, but public, we want to make sure we've declared a right. The Fifth Circuit did the same thing. They first held no qualified immunity or excuse me, there is qualified immunity because it wasn't clearly established in the Fifth Circuit, but precisely because this issue continually arises in just this situation of qualified immunity, the court went on to say that we need to adopt a rule for the future and going forward there was a First Amendment right and is in the Fifth Circuit. I appreciate that, but with the complication here of probable cause, it would be purely dictum for us to enunciate this rule. Can I explain why I would respectfully disagree with that, Judge Pooler? Please. The very definition of the claim that was made here, which is a First Amendment retaliation claim, the first element is that there is a First Amendment right to begin and then there's the defense. I would disagree 100% if the officer said stop filming. What happened was he's on top of the thing. The officer says get down. He gets down. He keeps filming. Nobody says a word to him. He gets back up. The officer says five times get down. He keeps filming. The officer has him arrested. So there's no interdiction because of someone exercising a First Amendment right. There's an interdiction because of a disobedience of an officer's order and then a return to the conduct which presents the probable cause for arrest. It would be a different matter if someone, if he had a hold of his camera and while police are shoving someone, they arrest him. They say stop filming this, and then they arrest him, right? The only place where I would disagree, Your Honor, is it is inherent in the definition of the First Amendment right that it's a right subject to reasonable time, place, and manner restrictions, and the courts can find. Well, if you ask for that from us, you better be careful what you ask for because what you're going to do is you're going to have us say that police officers do have the right to arrest someone who's filming because they present a clear danger. They're violating the criminal law. I don't think we are asking for anything other than that, Your Honor. What are you talking about? That's the facts of this case. A suit of clothes is only the cloth that's given. A case is only the facts that's given. We can't make up other scenarios and then say what the rules are. I don't think we're asking for that, Your Honor. Thank you, counsel. Thank you for your time. I don't blame you for wanting the answer. Mr. Bailen, don't give up on finding the right case if we don't agree with you on this one. I hope we convince you on this one. All right. Thank you. We'll hear from Officer Sylvester, New York City Corporation Counsel. Good morning. Good morning. My name is Ellen Ravitch. May it please the Court. I'm here on behalf of the three officers today. I'll just start off by addressing the case that was just taken by the Supreme Court. Good. I am aware of it. I have not read all of the papers in that case. But the difference in that case from what the amici and also the petitioners are asking for here is that the issue presented there is whether there is a right to be free from retaliatory arrest if the arrest is independently supported by probable cause. That is the right in this case, and this Court has decided it already. What the Supreme Court will do, we don't know. But for the Second Circuit, that right has been decided, and this Court has said that you cannot avoid a probable cause arrest just because you're engaging in First Amendment activities. That's the very issue that the Supreme Court is now reconsidering. Yes. The issue that the amici is pushing for here is something different. They're asking for a declaration of a general First Amendment right to record the police in public. And while we don't dispute that there is a right and we don't say that Mr. Higginbottom didn't have that right, it's just not the issue presented in this case because this Court has held that probable cause to arrest for independent reasons, and therefore it's different than the Mousseau case where it wasn't independent, is a complete defense to a retaliatory arrest claim. And therefore the analysis of both the Fourth Amendment and the First Amendment claims in this case are the same because probable cause is a complete defense. It's either First Amendment or Fourth Amendment? Yes. Your defendant's position here is that we've squarely decided the issue that's presented in this case. Yes. So that if counsel on the other side wanted to go forward, they would then need us to go in bank, our court to go in bank, to revise that. Well, I think what my point, I'm sorry I'm not giving a yes or no answer, but I think the point that I was making is that the issue that they want you to decide is not the issue presented in this case. And therefore it would be this Court reaching a constitutional issue when it's not necessary, and it's not specified by the case because it's not necessary to the decision. Here it's enough to decide whether there was probable cause. We can assume without deciding, but that's what Mr. Balin just argued. No one ever decides. We can assume without deciding that he had a First Amendment right, but in any event it's overwhelmed by probable cause? Well, there are cases in which courts have decided that First Amendment right because it's been presented. How would this case, just to help us here because we're sort of all wrestling with this issue and whether we can or cannot reach it, what would this case have to look like if we were going to reach the issue that Mr. Balin has eloquently argued we should be reaching? Well, perhaps it would look something more like what Judge Wesley already mentioned, which is that he was filming and he was told to stop filming and then was arrested for not stopping filming or for filming. Or he was told to stop filming, but he climbs back up. Or even if he weren't on the phone booth. And they arrest him for it. Or even if he weren't on the phone booth. Just if he were on the ground and he was filming. I'm trying to tie it more closely to this case, but there would have to be some instruction to stop engaging in a First Amendment activity. I think that would certainly put it closer to putting that particular First Amendment issue before the court. But here, he was on top of his phone booth. The officer's assessment was that it was a damp morning. It could have been slippery. He had 30 pounds of camera equipment on his shoulder, and he could have slipped. The phone booth had a curved top. I believe it was a constant curve. I don't think it was flat on the top from the pictures and the plans in the record. But the fact of the matter is, even if he was careful and he was a professional, it doesn't mean that it was not reasonable for the officers to look at that situation and say, if he slipped or lost his balance or whatever, whether due to the structure he was on, due to his camera equipment, due to the crowd below, and he fell, he had a sharp, edged, cornered 30-pound camera, and serious damage could have been done. Deal with the fact that the officers didn't seem interested in getting him down until the crowd got more, I hesitate to use the word violent, got more aggressive, and the police got, therefore, more aggressive in controlling them. That's when they were interested in stopping the filming. Deal with that because that is the First Amendment case. The first point I'll make on that is that it's irrelevant because police officers are not required at the first second that there is probable cause to arrest, to arrest someone, and under this court's precedent, motivation is not a factor. However, that is the contention here, but what's missing is what were the officers doing at that time? Were they paying attention to him? Did they assess the situation? That's the allegation, and it's not so clear from the record exactly what changed at that moment. I know they contend that it started getting more violent, but without a fuller picture, it's really hard to look at the record in this case. That's what they're saying. They need a jury to look at these facts. That's exactly the argument they're making. They are saying that, and that would be perhaps a good argument if it were relevant, but given that the motivation is irrelevant and there is no requirement to make an arrest as early as you possibly could to make an arrest valid, it is irrelevant. I'm sure they weren't happy about it, but I just don't see how you get away from Wren and the Wren-type cases and our cases. If he's got probable cause, the fact that he also doesn't like the fact that the guy's filming and he's more than happy to stop him from filming by arresting him, it's okay. It's allowed. It's not a violation of his First Amendment rights, but what's interesting in this case is when they told him to get down, he got down the first time. They didn't tell him to stop filming, did they? Actually, the first time, I think he got down on his own. Yes, I do, too. And then he got up. That's not really the part that's at issue here. I think he was up there, and he got down on his own. He continued to film. Nobody told him to stop, and then he got back up. Right, then he got back up, and then he was told to stop, and he concedes that when he was first told to stop, he turned around and kept filming. Ignored the officer. He ignored the officer, and then he was told at least five more times, and it's all in the video that's part of the record, to get down, and then finally he started coming down, and there were a lot of people around, and it was a little chaotic. The officers were helping him down, and it was very chaotic, which perhaps also led to the danger that was presented there. On qualified immunity, the officers also should win. First of all, if it's the right that they are trying to say about there's a right to record police in public, that is not clearly established in this circuit. Will it ever be? Well, it is in some circuits, and on the right facts, I'm sure it will be, but that issue is not fairly presented. We could hold that there is that right, but it was not clearly established at this point in time. I don't know why I put that there. Well, our position is that that is not actually the relevant right here. The right is about whether you can have a retaliatory arrest claim if there's independent probable cause. I agree with Judge Pooler's suggestion from earlier that I think it would be dicta in this case, because that is not necessary to the decision here. On the qualified immunity grounds, either probable cause, because this court has decided that probable cause does support an arrest even if there was First Amendment activity at hand, if the probable cause was independent. That's the very case at the Supreme Court. Yes, that is, but I would also say that this court should not in any way wait for the Supreme Court, because even on qualified immunity grounds, that a decision even in the other direction from the Supreme Court would not affect outcome here. Say the Supreme Court said that probable cause does not defeat a First Amendment claim. Right. If the Supreme Court said that . . . Which is one of the issues that they've taken to decide. Right. If the Supreme Court said that, it would not affect the outcome of this case, because that rule would not have been clearly established in this circuit, and therefore the officers would have been reasonable in taking the action that they took, in thinking that they could arrest for probable cause despite the First Amendment activity, or for arguable probable cause. Unless it was retroactive because it was a basic rule of protection of one of the amendments to the Constitution. Sorry. They could decide that. Except that probable . . . Sorry, I keep saying probable cause. Qualified immunity is dependent on what is clearly established in the circuit at that time. And even if the Supreme Court decides opposite from what this court has decided, then it would mean that the way that the Supreme Court decided was not clearly established at the time of this arrest, and therefore the officers would still . . . That's why it's such a catch-22. I understand. Thank you. We'll hear from Mr. Goldberg, who reserved two minutes for rebuttal. Thank you, Your Honor. I would ask the Court to consider what Judge Castell said in denying the 12B6 motion by the defendants. What he said was that a reasonable jury could find that the appellant here was removed from the booth solely, solely, because he had a better filming vantage point. That analysis, in terms of the First Amendment right, puts to rest, I believe, the argument that it's immaterial what their motivation was, particularly in a case . . . Maybe he's wrong. Perhaps he is, but that was not challenged in the motion for summary judgment. Judge Castell doesn't decide how we decide. I understand, and that's why I asked the Court to take note of it rather than be bound by it. I know you're not bound by it. I also would say to this Court in response that, again, our position is not that this was an independent action, that the probable cause here is a Fourth Amendment legal construct that the basis for removing him under the First Amendment analysis was an improper action to prevent him from filming at that vantage point, a vantage point that only another police officer had. That was the only person who had that vantage point. Let me ask you this. If the officer stood there and said, geez, I can't arrest him, even though it's a dangerous situation, and then he falls and he injures somebody, do you think the city gets sued because the officer saw a dangerous situation and didn't prevent it? I don't believe that a suit would lie under those circumstances. I believe the failure to take action requires a specific rather than a general protection. Well, officers, if they know that someone might be injured but they know the person that could be the cause of the injury is exercising a First Amendment right, can't protect members of the public? No. Oh. So then I guess it was okay for the officer to tell him to get down? I have never stated otherwise, Judge. And I would— You concede that it was appropriate for the officer to tell him to get down? Yes, I always have. Okay. Even at the 12b-6 argument. Your point was, in your earlier argument, what shouldn't have happened is he shouldn't have been arrested. That's correct. So it's solely the arrest that you— Yes. And I would like to—well, for Fourth Amendment analysis, but I would like to just address something that Judge Wesley said, which I thought was very illuminating. What you said, Your Honor, was that they told him to get down and that he didn't. And that's true, and you can see in the video it's very clear. He's told to get down by Officer Sylvester and another officer. Thirty seconds go by before Captain Taffy, Defendant Taffy, comes over. Defendant Taffy tells him, I believe, either five or seven times to get down repeatedly. Get down, get down, get down, get down. Within five seconds of Defendant Taffy telling him to get down, he begins to get down. What Your Honor said was they tell him to get down repeatedly, and he disobeys their order, and then they arrest him. The disobedience of an order to get down should not be the basis of an arrest. If they made that determination that we are arresting him for— You know there's a crime in New York for the disobedience of a lawful order. Well, yes, of course there is. But the question is, is it a lawful order or not? That begs the question. The exercise of an officer's discretion doesn't vitiate the existence of probable cause. No. The officer could have done one of two things. He could have arrested him or said, okay, let's just let it go. I've got enough things to worry about. But the fact that he or she exercises their discretion to arrest him doesn't somehow color the First Amendment analysis, does it? No, it does not if there is, in fact, probable cause. Okay. Absolutely not. Fair enough. Thank you. Thank you all for bringing us this interesting case. We'll reserve decision. The next matter on our calendar is—